Defendant and Defendant Are there any other questions? Do you have anything else to add? Okay. No, thank you very much. You'll have a chance on rebuttal to reply. Thank you. Ms. Campbell? Good afternoon, Your Honor. Stephanie Campbell representing the people of the State of Illinois. First, I'm going to address the forfeiture since we've just addressed that. It is not just... Defendant did indeed forfeit this. As I believe Justice Burkett pointed out, it was raised at the sentencing hearing. It was mentioned that that is the first time that Defendant and the State find out that he's eligible for the natural life habitual criminal. But in addition to that, the Defendant personally made the decision against his counsel's advice to withdraw his motion to reconsider sentence. So that was his opportunity to raise it in the trial court when it was fresh. They could have fleshed out the record at that point regarding what wasn't and wasn't known and what the Defendant did or did not know. So he forfeited that by going against his counsel's advice and withdrawing the motion to reconsider sentence. So no sentencing issues were raised in the direct appeal. And then if you have no more questions on that... Wouldn't there... Wouldn't we have had to look at the record on direct appeal and see whether the State had provided any information with respect to the terms of the offer? Whether that was part of the record at that point? Otherwise, how could prejudice have been shown if that weren't part of the record? And I'm not sure it was. Okay, the Defendant's arraignment was clearly in the record. There is the testimony at the sentencing hearing by the ASA that he did not know until he looked at the PSI and that's when he filed his motion for habitual criminal. There was testimony from Spaulding that, and this is at R1123, that he relied on the criminal history provided by the State. So there is evidence in the record that would have... Certainly there's enough evidence for the Defendant to have raised that issue. And then he could have argued ineffective assistance of counsel and gotten a crankle. But in large part, it's not fleshed out because he withdrew his motion to reconsider sentence. Any more questions on the forfeiture? Okay. One thing that I have to emphasize is that it's the Defendant's burden to make a substantial showing of a constitutional violation. He has not done that here. There's a number of cases, amongst them Hale and Curry, which say that the showing of prejudice must encompass more than the Defendant's own subjective self-serving testimony and that there has to be independent objective corroboration. That is lacking in this case. There's no affidavit by the pre-negotiating attorney Abrams. He was not called to testify at the evidentiary hearing. There's no affidavit by Nikitas. He's the negotiating attorney in the other charges. He was similarly not called to testify at the hearing. There's no copy of the transcript, and there are, in Defendant's appendix, three-plus pages of the transcripts, which are included in the Record on Appeal. The only missing portion is the day when they were set to go to trial. That is that Monday when we would have known about the expired plea and that it didn't go through. That is the date when Abrams is given leave to withdraw as the Defendant's trial counsel. That's the only transcript missing that could have supplied support for the Defendant's claim. Do we know what happened to the other cases, the Defendant's other cases? It is not in the Record on Appeal. So what we do here might affect the outcomes of those other cases, correct? The last I know for the other case is that Nikitas was saying that he may also be asked by the Defendant to withdraw. I don't know if because the Defendant received the natural life sentence in this case they did not pursue that. It is not mentioned in the Record on Appeal. It's not noted in this Court's Rule 23 on the direct appeal. But if we're looking at that other case, in my brief at page 11 to 12, I review those other charges. There are two attempt murders, which are Class X's. There's an armed violence, which is a Class X. Three aggravated firearm charges, which are Class I's and other felony charges. As was pointed out, the Defendant was also on bail awaiting trial in this case when he committed those offenses. Plus, the Defendant testified that the 20 years for attempted murder he thought was at 50%, not 85%. So it's very clear that not only would the State and the trial court not have accepted a 26-year plea had the Defendant accepted it, but that his hope for a 26 or a 22 was not in any way realistic. In my brief on page 10 and 11, I recap the negotiations that were ongoing. What basically happened is that they come in for the final pretrial on, I believe, a Thursday. And Abrams says that they hope for a comprehensive plea negotiation. Abrams is only attorney for this charge. The much more serious charges are with the Defendant's other trial counsel, Nikitas. And Nikitas is also present. He says that he can only meet with the Defendant on Friday. The State makes clear that the plea bargain will expire on Friday. And he says he'll make himself available. The trial judge, Judge Shaines, says he will make himself available. And Judge Shaines, in fact, says, if I see you Friday afternoon, I'll know why you're here and we will deal with it. But Abrams' statements are, you know, it's not this case that's holding up the comprehensive plea. It's the other. And that he is waiting to hear from the other counsels, but he is presuming that he is going to trial on Monday. It's very clear that there is no real set plea bargain. And, again, we only have Defendant's self-serving testimony because neither of the negotiating attorneys give either affidavits or testimony. And, again, the transcript from, you know, the date when the plea would have failed, you know, is absent from the record. You argue in your brief that the Defendant did not have clean hands, as he didn't speak up when he had the opportunity to do so, regarding the other conviction. But didn't our Supreme Court in the Hawkins case reject that document as a bar to post-conviction relief? I am not familiar with the Hawkins case. 181 Illinois 2nd, 41 in 1998 case. At least that's my reading of it. Okay. What I will then argue from is Judge Shane's comments. Again, since this is an evidentiary hearing, great deference is given to the trial judge's findings of fact. And Judge Shane's comment is that, again, the only testimony is the Defendant's self-serving testimony. And he said, quintessentially self-serving testimony. More importantly, I simply don't believe it. And that's at Bar 1194. We also have Spaulding's. The only testimony we have that could in any way corroborate the Defendant's claims are Spaulding. He's actually the attorney who would be sort of the least helpful because he was not involved in negotiations at any time. In fact, he says that the Defendant was, when he tried to raise or mention a negotiation because he was hired to take the case to trial, that the Defendant was, quote, adamant about not wanting to accept a plea. That's at Bar 1117 and 1119 in my brief at page 12. Judge Shane's notes the Defendant's statements in elocution. I'm not guilty of this crime. There's been a crime against me. That's at R935 in the trial court's findings at 1194. And Judge Shane's also notes the Defendant wanted to take the case to trial. That's in my brief at page 13 and his comments in the record at 1195. So, basically, you have to look not only is there a reasonable probability that the Defendant would have accepted a plea, which clearly the record shows that he wouldn't, but you also, according to Hale, you have to show, or the Defendant has to show there's a reasonable probability that the State would not have canceled the plea or the trial court would have refused to accept. Here, you have the ASA's comment that he didn't know about the prior until the PSI, and then he filed the motion for natural life habitual criminal sentencing. Obviously, that's a reasonable inference that had they known, they would not have entertained a 26-year plea. And the Defendant's not making any due process argument that he was entitled to notice sooner than trial, right? No, and the trial court found that it's the State's discretion whether or not to file a habitual criminal petition. And that's at 1188. That was not contested. And then there's the other half of that, is that the trial judge, whether or not he would have refused to accept it. Here, Judge Haynes is very clear he would not have accepted the 26-year. His statement was that had he not imposed the natural life sentence under habitual criminal, he would have imposed a 60-year sentence. And that's just in this case. That's not anything in the other charges. I did a little math last night, and the Defendant was born in 1957. The sentencing was in 2009. A 60-year sentence would have taken him to 112 years old in prison. That does not include the 85 percent or some credit for time. The 26 years would have taken him to 78 years old. Again, that doesn't include 85 percent or credit for some time. Defense counsels argued that, or appellate defense counsel argued that if they had gone into some more negotiations, perhaps they could have come up with a better deal for the Defendant. Even a 40-year sentence, had the State by some miracle agreed to that, it would have made the Defendant 92 years old. Again, an effective natural life sentence. So the Defendant has no real incentive, and there's no realistic possibility that he would have agreed to a sentence longer than 26 or 22, which was what he was really hoping for. Clearly, all his statements that he wanted to go to trial and Judge Shane's credibility, finding that that is what he wanted to do, indicate that both prongs. He would not have accepted. There's not a reasonable probability that he would have accepted a plea. The State would not have offered it. The trial judge would not have accepted it. If he had disclosed the information to Mr. Abrams, and hypothetically there was still some offer on the table, and when the trial court asked the Defendant's criminal background, Mr. Abrams would have been required as an officer of the court to disclose the firearm robbery, which would have thrown the whole thing off the rails anyway, correct? Correct. As an officer of the court, he would be required to inform the court that the information the State was relying on was inaccurate. Correct. The record is entirely silent as to what the Defendant and Abrams did or did not discuss, except for the Defendant's self-serving statements. Obviously, had there been an affidavit from Abrams or had he been called to testify at the hearing, that could have been cleared up. That is, in fact, some of the major distinctions in both Brown and Curry. In Curry, there was additional evidence to the Defendant's testimony. The defense counsel had statements at the sentencing, and the defense counsel had an uncontradicted affidavit, which corroborated the Defendant's claim. In Brown, the statement of the court is that the gravamen of the Defendant's ineffective assistance claim is that trial counsel's inadequate representation made it impossible to make a knowing and voluntary decision. That's at 606, but that's contradicted by the Supreme Court's holding in Hale at 23, where the court holds that an inquiry into whether the plea was knowing and voluntary is not the correct measure to address an ineffective assistance claim. Additionally, in Brown, there are not just one as in Curry, but there are, in fact, four affidavits, which corroborated one by the Defendant himself, one, an uncontradicted one, by his trial counsel admitting his erroneous advice on which the Defendant depended. There's an affidavit by the investigator who interviewed the Defendant, got the complete criminal history. The Defendant was materially accurate in that. The investigator put it in the case file, and there's an affidavit from, I believe, a supervisor in the PD's office that subsequently reviewed the file and saw the investigator's report in it. So the defense counsel there had full knowledge and failed to utilize it. Thank you very much. Thank you. Thank you very much, Ms. Ariso. Okay. Regarding, again, the Hale case and the need to show something other than the Defendant's self-serving statement, in Hale, the Defendant's testimony was contradicted by an affidavit from defense counsel. We don't have that here. We don't have corroboration, but we also don't have contradiction, and I think that's important that we don't have someone saying that this, what he said to Abrams, what the conversations he did or did not have with Abrams are not true. What about the question I asked about, had the Defendant told Mr. Abrams about the prior armed robbery that the State was not previously aware of, wouldn't he have been required to inform the Court at a sentencing hearing? At a sentencing hearing, yes. I think that the issue with the clean hands argument that they raised regarding the Montgomery hearing, I think at that point there was no duty for anyone to speak up at that point. But at a sentencing hearing, the Court would have to. And I think presents what he knows to be the background. And the State would have been well within their rights to withdraw any offer if they had been misinformed about a prior, correct? I suppose so, yes. But that didn't happen here, obviously. But the point is, you have to demonstrate prejudice. There's just simply, I'm trying to figure out how do you demonstrate prejudice here? I mean, is there a way? Besides what the Court found, hypothetically, even if the Defendant was in a position to take the offer because the State was not aware, Mr. Abrams would have been required to disclose that to the Court. But he didn't know. Well, that's the argument, that he didn't know because he asked. He has to tell. So again, that doesn't mean that there would have been no plea at that point. Had everyone been aware of the situation with the prior convictions, there could have been different plea negotiations and a different plea reach. It doesn't mean that he would end up with natural life. And I think that's what's important to think about here, is the prejudice is that he is serving natural life when he didn't know that he was going to have that possibility of that happening. And just briefly, I wanted to address the issue with the transcript that the State has mentioned there would have been to say that they went to trial. We don't know what happened that day other than Abrams was discharged. But again, I don't see how that would prove anything here because at that point the Defendant's state of mind was still one of not knowing that he faced natural life. So even if at that point he said, I'm going to trial, I wanted to go to trial, he was going to trial on the idea that he was not facing natural life. So I think that anything that would have been said there wouldn't have provided any sort of argument in favor of the fact that he wouldn't have taken the plea because, or why he didn't take the plea, because he was unaware that he was facing natural life. If there are no further questions. Thank you. Okay, thank you very much, Counsel. The Court will take the matter under advisement. We'll take a brief recess until the next case.